IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FLORINDA HASKIE**,

      Plaintiff,

v.                                                                        NO. 10-CV-966 WJ/LFG

**UNITED STATES OF AMERICA**,

      Defendant.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN FAVOR
OF DEFENDANT UNITED STATES OF AMERICA**

THIS MATTER is before the Court following a two-day bench trial held in the above-captioned case before the undersigned on February 21 and 22, 2012. Both parties submitted proposed findings and conclusions of law. Having considered the testimony of the witnesses at trial and the evidence admitted, I find in favor of Defendant United States of America.

**I.    FINDINGS OF FACT**

1. Plaintiff, Florinda Haskie, is a tribal member and resident of the Zuni Indian Reservation. At all material times, plaintiff resided in Zuni, New Mexico within the Zuni Indian Reservation. Her post office box is located in Zuni at the Post Office occupied and operated by the defendant United States.

2. On October 1, 1975, the Defendant entered into a lease agreement with the Pueblo of Zuni to lease a parcel of land with a newly constructed building, located near the tribal offices on Highway 53 in Zuni, for use as a Post Office. The Defendant currently leases, occupies and operates a Post Office at this property as it has done for the past 36 years.

3. In 1991, the Defendant commissioned and planned the construction of a new concrete landing with a ramp and handrail as part of the Architectural Barriers Compliance

    Program.

4. The landing was built so its elevation is the same as the lobby of the Post Office. The dimensions of the landing are approximately 7 ft. 9 in. wide by 8 ft. deep. The square-shaped landing is located directly in front of the Post Office entrance under a portico. The portico is centered on the front entrance with dimensions 10 ft. 3 in. wide by 8 ft. deep. When facing the front entrance, the landing extends to the edge of the portico on the right side of the entrance. The landing ends approximately 2 ft. 6 in. from the edge of the portico on the left side of the entrance. The landing is elevated approximately 4 or 5 inches above the walkway running in front of the Post Office to the parking area.

5. Neither the step nor the landing appear to have been painted yellow previous to the events in question. Instead, certain remnants of paint adjacent to the ramp appear to have been part of the safety paint for the ramp, not for the step.

6. Florinda Haskie has been going to the Zuni Post Office since 1980. Until April 15, 2008, Florinda Haskie would visit the Post Office approximately twice a week.

7. The Court does not find Plaintiff's testimony credible that she had never before set foot inside the post office. This testimony directly contradicts the bulk of Plaintiff's unambiguous testimony on that fact in her deposition, and also disagrees with the testimony of other witnesses. Additionally, other factors support the Court's determination that Plaintiff is not credible on this point, including her demeanor during direct and cross examination. Therefore the Court concludes that Plaintiff had regularly visited the post office, entering through the same front door in question in this case.

8. Florinda Haskie fell while coming out of the Zuni Post Office on April 15, 2008, at approximately 1:15 p.m.

9. Before she fell she was standing on the landing in front of the main door, and was holding the door for an elderly man to walk into the Post Office. She was holding the mail she had gotten from her post office box.

10. Ms. Haskie let go of the door after the elderly man was in the post office. She was facing west. She stepped out with her right foot, not expecting the step, and took an "air step." When her foot reached the ground off the landing, it twisted, and she fell, striking the Post Office wall with her right shoulder. She then fell onto her left knee. Plaintiff suffered a 20cm laceration across her left knee cap.

11. Ms. Haskie was scared, in pain and embarrassed by the fall.

12. Loretto Nastasio, a patron of the Post Office, was a witness to Ms. Haskie's fall. Ms. Nastasio got out of her car to assist Ms. Haskie.

13. Ms. Nastasio volunteered to call an ambulance for Ms. Haskie but Ms. Haskie declined. Some blood was starting to come through Ms. Haskie's pants. Ms. Haskie felt pain in her legs and remained at the Post Office for approximately ten minutes.

14. Ms. Haskie was assisted to her truck by Ms. Nastasio and then Ms. Haskie drove away.

15. Upon leaving the Post Office parking lot, Ms. Haskie drove to Rona Kanteena's house to return the borrowed vehicle she was driving. Ms. Kanteena is Ms. Haskie's sister-in-law and the sister of Ms. Haskie's late husband.

16. Ms. Haskie informed Ms. Kanteena that she had fallen outside the Post Office and asked Ms. Kanteena to look at her knee. Ms. Haskie's pants were too tight to pull up and when the pants were pulled down in the bathroom, the wound was too large for Ms. Kanteena to treat. Tribal Police and an ambulance were called. The ambulance arrived and the EMT's came into the house. They had to cut away the pants around the knee to see and

begin treating the wound by irrigating it with saline solution. The Police Officer took a picture of Ms. Haskie's knee during this treatment. Ms. Haskie was taken to the Zuni Indian Health Hospital for further treatment. Darla Leekity was one of the EMTs who treated Ms. Haskie initially.

17. EMT Leekity reported Ms. Haskie had pain in the laceration but not anywhere else. Ms. Haskie had minimal bleeding on the wound.

18. EMT Leekity reported that she had never responded to a fall at the Post Office.

19. Ms. Kanteena goes to the Post Office regularly and sometimes walks out by the route Ms. Haskie took when she fell. Ms. Kanteena almost fell once when she was carrying mail and a box and couldn't see the step. She does not recall the step ever being painted yellow.

20. Ms. Haskie is an eligible beneficiary for medical care by the Indian Health Services, and was treated at the Zuni Indian Health Hospital for her injuries. The United States has paid all of Defendant's medical expenses in relation to this injury, and the United States will continue to pay for any potential future medical treatment related to this injury.

21. Ms. Haskie suffered a laceration to her knee, a bruise to the shoulder and a sprain of the right ankle.

22. Dr. Katics at the Indian Health Services Hospital provided emergency care to Ms. Haskie. His treatment consisted of assessing and cleaning the wound. Xrays were taken which showed no fractures or dislocations. He noted that the wound penetrated the skin and subcutaneous layers but not the deep fascia.

23. Dr. Katics closed the wound by suturing the subcutaneous layer and then suturing the skin with a total of 32 sutures.

24. Dr. Katics provided Ms. Haskie with a soft brace for her left leg to wear until she returned to the clinic in three days.

25. The soft brace was discontinued on April 18, 2008, and Ms. Haskie had her sutures removed on April 29, 2008.

26. Ms. Haskie was referred to physical therapy for wound care and physical therapy on May 2, 2008.

27. On August 6, 2008, Ms. Haskie reported that she felt the wound was healing well and she had no problems.

28. On September 9, 2008, Ms. Haskie reported to her health care provider that she was doing fine and had no complaints. She has continued check ups and physical exams, and as of October 11, 2011, she reported to CNP Faber, her primary care provider, that she had no complaints other than recently having sprained her shoulder while cooking.

29. Ms. Haskie currently takes care of her elderly father. She cleans house and cooks for him as well as assisting him with his medical care needs. She is compensated for this work through a grant program.  Ms. Haskie also currently makes jewelry with her father.

30. At the time of this injury, the Officer in Charge at the Zuni Post Office, Dominic Escajeda, was responsible for the daily operation of the Post Office.  He does not recall the step in question as having ever been painted yellow prior to Ms. Haskie's fall.  Mr. Escajeda would inspect the facility and if necessary would contact the Lessor, the Zuni Tribe, of any needed maintenance or would take action himself if there was snow or ice that could be considered dangerous.  Mr. Escajeda was never advised as to any falls at the Zuni Post Office.

31. Neither the Uniform Building Code (UBC) or the International Building Code (IBC)

   requires any tactile or visible marking for the top of a landing step.

32. Photographs taken after the accessibility changes were made in 1991 show no evidence of any yellow paint on the landing.

33. Neither the building codes or any design codes require symmetry in the construction of a building or landings leading into a building. While Plaintiff's expert's testimony established that the fact that the landing was not coextensive with the portico made the landing slightly different than normal, safety does not require that all building entrances be exactly the same.

34. Ms. Haskie's fall, reported to the USPS in the form of an administrative claim, is the only claim of a fall at the Zuni Post Office that has been received over the course of its 32 years in existence and 21 years since the handicapped accessibility changes were made.

## II. CONCLUSIONS OF LAW

1. Plaintiff has exhausted her administrative remedies in this case.

2. This Court has jurisdiction of the parties and the subject matter.

3. Venue is proper the United States District Court for the District of New Mexico.

4. The law of this case is the Federal Tort Claims Act, 28 U.S.C. § 1346(a), 28 U.S.C. §§ 2671 *et seq.*, and the substantive law of the State of New Mexico, the law of the place.

5. The USPS is a covered entity under the Federal Tort Claims Act.

6. Defendant, occupant of the Zuni Post Office, exercised ordinary care to keep the premises safe for use by visitors. UJI 13-1309.

7. Defendant, occupant of the Zuni Post Office, exercised ordinary care and performed reasonable inspections to identify dangerous conditions of the leased premises. UJI 13-1318.

8. The landing, added to the leased premises in 1991, was not "a dangerous condition" as contemplated under New Mexico tort law but rather was an ordinary step which could be safely navigated by a person taking ordinary care and paying proper attention.

9. The landing did not pose an unreasonable risk to Ms. Haskie under *Klopp v. Wackenhut Corp.*, 824 P.2d 293, 298 (N.M. 1992).

10. Plaintiff has not proven the key elements of her case: that Defendant was negligent, and that Defendant's negligence proximately caused her injuries.

11. Any finding of fact that is more appropriately a conclusion of law shall be deemed a conclusion of law. Any conclusion of law that is more appropriately a finding of fact shall be deemed a finding of fact.

12. A Judgment consistent with these findings and conclusions shall be entered in favor of Defendant United States and against Plaintiff Haskie, in accordance with Fed.R.Civ.Proc. 52(a)(1).

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE